Archie PETERSON and Robert Doster

v.

LEHIGH VALLEY DISTRICT COUNCIL, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, et al.

Robert DOSTER

v.

LEHIGH VALLEY DISTRICT COUNCIL, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS, et al.

Civ. A. Nos. 76–2937, 78–2734.

United States District Court,
E. D. Pennsylvania.

Sept. 17, 1979.

C. W. Bowser, W. H. Bishop, III, Philadelphia, Pa., for plaintiffs.

C. W. Johnston, Jr., Harrisburg, Pa., J. T. Giles, Sally A. Akan, M. G. Marinoff, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Early in 1972 plaintiffs, both blacks, enrolled in the Lehigh Valley Opportunity Industrialization Center (OIC) program, which referred them to G & Q Drywall Company (G & Q), an Ohio contractor working on a public housing project in Allentown, for employment as carpentry apprentices. Within a short time G & Q discharged both plaintiffs, who accused G & Q of racially discriminating against them. Plaintiffs also complained that Local 368 of the Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners (Union), an unincorporated labor union which through various union locals represents carpenters and apprentices employed by commercial contractors in a five-county area in northeastern Pennsylvania, repeatedly denied their requests for membership and refused to consider them for the apprentice program. Plaintiffs charged that the union, as the exclusive bargaining representative of all carpenters and carpenters' apprentices employed by G & Q, and the General Contractors Association of Lehigh Valley, Inc. (Contractors Association), a private non-profit association of construction contractors and collective bargaining agent for its member contractors in negotiations with unions, refused to represent plaintiffs in a wage dispute with G & Q, failed to apprise plaintiffs of work rules in the construction industry and effected their discharge by refusing to allow them membership into the union. To obtain compensatory and punitive damages and a declaratory judgment declaring defendants' allegedly discriminatory practices violative of the First, Thirteenth and Fourteenth Amendments, various federal civil rights statutes and the Labor Management Relations Act of 1947, 29 U.S.C. § 185, plaintiffs filed this action. Plaintiffs now move for certification as a class action under Fed.R.Civ.P. 23(a) and (b)(2).[1]

---

1. Plaintiffs filed a *pro se* complaint, September 20, 1976. After obtaining counsel they amended the complaint May 27, 1977, and again October 11, 1977. The second amended complaint named the following defendants: Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners, Local 368, General Contractors Association of Lehigh Valley, Inc., Walter D. Fries, a business agent for the union, Fred Miller, a shop steward for Local 368, and John Larsen, apprentice co-ordinator for the Union.

■ To maintain suit on behalf of others similarly situated, plaintiffs must define precisely whom the purported class will include. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970), *Giordano v. Radio Corp. of America*, 183 F.2d 558, 560–61 (3d Cir. 1950), *Lopez Tijerina v. Henry*, 48 F.R.D. 274, 276–78 (D.N.M.1969), *appeal dismissed*, 398 U.S. 922, 90 S.Ct. 1718, 26 L.Ed.2d 86 (1970), *Koen v. Long*, 302 F.Supp. 1383, 1388–89 (E.D.Mo.1969), *aff'd*, 428 F.2d 876 (8th Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 827 (1971), *Chaffee v. Johnson*, 229 F.Supp. 445, 448 (S.D.Miss.1964), *aff'd*, 352 F.2d 514 (5th Cir. 1965), *cert. denied*, 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966). Plaintiffs have experienced difficulty in defining a consistent and precise group to represent. Initially plaintiffs moved for certifying the class on behalf of

all blacks and other minorities who have sought admission into Local No. 368 and/or apprenticeship programs and have been denied such as a result of racial animus.

Plaintiffs' Second Amended Complaint, § 14. Later Plaintiffs broadened their definition to include

all black individuals who have been, are, have sought to be, or will seek to become members of Defendants, Local No. 368, Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners, and the General Contractors Association.

Plaintiffs' Amended Motion for Class Action Determination, § 1. Ultimately, plaintiffs included

(a)ll blacks and other minorities who have sought or will seek admission into Local 368 and/or apprenticeship programs and have or will be denied such as a result of racial animus (and) all union and non-union black citizens who have been refused employment by the defendants in violation of the Federal Civil Rights Statutes.

Plaintiffs' Memo at 6. Which class is the one to be certified remains unclear.

■ Irrespective, plaintiffs must be members of the class they seek to represent. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), and "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class". *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975). Plaintiff Peterson, when deposed, testified that he never made any written application to the apprentice program; plaintiff Doster admitted that the union never refused him an application for union membership or participation in the program. Plaintiffs are also not mem-

In Count I of the Second Amended Complaint plaintiff Peterson sues all defendants and seeks compensatory and punitive damages, attorney's fees and a declaratory judgment declaring defendants' allegedly discriminatory practices "null and void" as violative of the First, Thirteenth and Fourteenth Amendments, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII).

In Count II plaintiff Doster sues all defendants and seeks compensatory and punitive damages and attorney's fees. In Count III plaintiffs, as class representatives, sue all defendants and seek relief identical to that requested in Count I. In Count IV plaintiffs individually sue the Union, the Contractors Association and Local 368 and seek compensatory and punitive damages, attorney's fees and a declaratory judgment declaring defendants' allegedly discriminatory practices violative of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

By memo and order, June 9, 1978, the Court dismissed Doster's Title VII claims and both plaintiffs' claims against the Contractor's Association under Title VII and struck all claims for punitive damages under § 301 of the Labor Management Relations Act, Title VII, § 1983, and the First, Thirteenth and Fourteenth Amendments.

On August 15, 1978, plaintiff Doster commenced a separate action with a § 1981 claim against the Union, Local 368 and the Contractor's Association, and a Title VII claim against the Union defendants. By stipulation of counsel both claims were consolidated, January 15, 1979.

Plaintiffs settled claims levelled against G & Q prior to institution of this action and therefore did not name G & Q as a defendant. *See Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735 (E.D.Pa.1978).

bers of a class composed of "all . . . black citizens who have been refused employment by the defendants", for plaintiffs *did* obtain employment through defendants' offices. Thus, plaintiffs are not members of *any* of the classes which they purport to represent. *See also East Texas Motor Freight Systems, Inc. v. Rodriguez,* 341 U.S. 395, 403–04, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Sosna v. Iowa,* 419 U.S. at 403, 95 S.Ct. 553; *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Rosario v. Rockefeller,* 410 U.S. 752, 759 n. 9, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166 (1972); *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).[2]

▆ Even assuming plaintiffs are members of the putative class, plaintiffs did not show that the class was so numerous that joinder of all members was impracticable. Fed.R.Civ.P. 23(a)(1). A mere allegation of numerosity, *Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. 125, 127 (E.D.Pa. 1978); *Hauck v. Xerox Corp.,* 78 F.R.D. 375, 377 (E.D.Pa.1978); *Martin v. Easton Publishing Co.,* 73 F.R.D. 678, 682 (E.D.Pa. 1977), or speculation unsupported by facts, *Sims v. Parke Davis & Co.,* 334 F.Supp. 774, 781 (E.D.Mich.), *aff'd,* 453 F.2d 1259 (6th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1196, 31 L.Ed.2d 254 (1972), is insufficient. Although the number of prospective class members is not alone determinative of the impracticability of joinder, it is a relevant consideration, *Giordano v. Radio Corp. of America,* 183 F.2d at 561; *Sims v. Parke Davis & Co.,* 334 F.Supp. at 781. Plaintiffs must demonstrate the existence of *some* other class members who have suffered similar wrongs. *Wright v. Stone Container Corp.,* 524 F.2d 1058, 1062 (8th Cir. 1975); *Thompson v. Sun Oil Co.,* 523 F.2d 647, 649 (8th Cir. 1975); *Larkin v. United Steelworkers of America,* 409 F.Supp. 1137, 1138

(W.D.Pa.1976). Relying on future applicants will not satisfy this requirement. *Piva v. Xerox Corp.,* 70 F.R.D. 378, 388 (N.D.Cal.1975). Plaintiff Doster knew of no other blacks who applied to the carpentry apprentice program in a year in which applications for the program were taken and openings were to be filled. Plaintiff Peterson knew six persons, of whom three obtained positions in the program. A fourth applicant was employed by a contractor in a contractual relationship with the union and a member of the Contractor's Association. Despite opportunity through discovery to establish numerosity, plaintiffs have offered no other evidence to suggest the infeasibility of joinder. The possibility of two other plaintiff applicants in the putative class is hardly so numerous. *Cf. Giordano v. Radio Corp. of America,* 183 F.2d at 561 (fifteen other possible members of the "class" held insufficient to be "so numerous").

▆ Plaintiffs also fail to show "questions of law or fact common to the class", Fed.R.Civ.P. 23(a)(2), by presenting evidence that defendants acted in a similar manner toward all black applicants, thus suggesting a policy or pattern of discrimination against blacks because of their race. The existence of an identifiable policy or practice of discrimination and common application to a defined class are essential to accepting plaintiffs' "across the board" approach to obtaining (b)(2) certification. *Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. at 128; *Hauck v. Xerox Corp.,* 78 F.R.D. at 398; *Webb v. Westinghouse Electric Corp.,* 78 F.R.D. 645, 650 (E.D.Pa.1978); *Martin v. Easton Publishing Co.,* 73 F.R.D. at 683, because the "cohesive" nature of the class binds its members by collateral estoppel or *stare decisis* effect. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 256 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Requiring the interests of the class members to be

---

**2.** Most succinctly stated, "(t)o have standing to sue as a class representative it is essential that a plaintiff must be part of that class, that is, he must possess the same interests and suffer the

same injury shared by all members of the class he represents". *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. at 216, 94 S.Ct. at 2930.

like those of the named representatives is a safeguard designed to avoid injustice by the operation of these principles. *Martin v. Easton Publishing Co.,* 73 F.R.D. at 683. In the case at bar there is no indication that plaintiffs suffered as a result of an identifiable policy. Plaintiffs concede that other black applicants who followed appropriate procedure gained admittance into the union and apprentice program. Whether defendants followed appropriate procedure is a question of fact unique to them. Plaintiffs have not demonstrated sufficient "commonality" to satisfy this requirement.

■ Plaintiffs also fail to make the required showing that they "will fairly and adequately protect the interests of the class". Fed.R.Civ.P. 23(a)(4). In *Jenkins v. General Motors Corp.,* 354 F.Supp. 1040, 1044 (D.Del.1973), the court explained that Rule 23(a)(4)

> requires . . . that the . . . representative party must have a sufficient stake in the class claim to assure that he will adequately litigate the issues upon which the class claim depends and the determination of which will ultimately be binding on the members of the class.

Plaintiff Doster admitted that he has no desire to be admitted to the apprentice program. Likewise, Peterson has indicated a lack of interest in becoming a carpenter's apprentice. Although plaintiffs may have a personal interest in proving discrimination in 1972, they have expressed no present interest in establishing the existence of a pattern of discrimination from that time until the present. As noted above, establishing this pattern is critical to plaintiffs' "across the board" approach.

Plaintiffs have the burden of establishing that they have met the requirements of Fed.R.Civ.P. 23(a) and (b)(2). *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir. 1974);

*Martinez v. Bethlehem Steel Corp.,* 78 F.R.D. at 127; *Hauck v. Xerox Corp.,* 78 F.R.D. at 377; *Martin v. Easton Publishing Co.,* 73 F.R.D. at 682; *McFarland v. Upjohn Co.,* 76 F.R.D. 29, 31 (E.D.Pa.1977).[3] They must do "more than name the preserve on which (they) intend to hunt". *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1126 (5th Cir. 1969) (Godbold, Jr., concurring). Plaintiffs have failed to meet their burden. Accordingly, their motion for class action certification will be denied.

---

**3.** *See East Texas Motor Freight System, Inc. v. Rodriguez,* 341 U.S. at 405–06, 97 S.Ct. at 1898, where the court observed that

> suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But *careful attention to the requirements of*

*Fed.Rule Civ.Proc. 23 remains nonetheless indispensable.* The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination. (emphasis added)