John DOE I, et al., Plaintiffs,

v.

**GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,**
et al., Defendants.

No. 89 C 7955.

United States District Court,
N.D. Illinois, E.D.

April 27, 1992.

D'Ancona & Pflaum, Chicago, IL, for Robert W. Gettleman.

Jerome F. Goldberg, Ltd., Chicago, IL, for Jerome F. Goldberg.

William G. Clark, Jr. & Associates, Chicago, IL, for William G. Clark, Jr.

Peterson & Ross, Chicago, IL, for Peter M. Sfikas.

Sonnenschein, Nath & Rosenthal, Chicago, IL, for Robert C. Johnson.

Kirkland & Ellis, Chicago, IL, for G. Christian Kronberg.

Pope & Johns, Ltd., Chicago, IL, for Margaret A. Daley.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs John Doe I ("Doe I"), John Doe II ("Doe II"), and John Doe IV ("Doe IV") brought this claim on behalf of all participants and beneficiaries of certain employee health insurance policies issued by defendants Guardian Life Insurance Company of America, ("Guardian Life"), The Travelers Insurance Company of Illinois ("Travelers"), and Blue Cross and Blue Shield of Illinois ("Blue Cross"), alleging that the defendants breached the terms of the pertinent insurance policies, breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), and violated certain ERISA disclosure requirements. The plaintiffs claim that the defendants wrongfully refused to accept insurance claims that they and other beneficiaries submitted for treatment of bipolar affective disorder. The plaintiffs seek declaratory and injunctive relief, compensatory damages for benefits denied them, monetary penalties under ERISA § 502(c)(1), costs and expenses of this action, and reasonable attorney's fees under ERISA § 502(g).

The plaintiffs subsequently brought a motion for leave to proceed in this case as a class action suit and the court referred the matter to Magistrate Judge Gottschall for a report and recommendation. During the course of the briefing on the motion, the parties brought four separate motions to strike materials submitted regarding the class certification motion. The plaintiffs moved to strike the affidavit of Dr. David A. Gehlhoff. The plaintiffs also moved to strike certain excerpts of Doe IV's deposition testimony. Defendant Blue Cross moved to strike certain of the plaintiffs' statements regarding Doe IV's deposition testimony and Defendant Guardian Life moved to strike the plaintiffs' supplemental response to Guardian Life's second request to admit.

The Magistrate Judge, in a thorough and well reasoned report, recommended that the plaintiff's motion to proceed as a class be denied. The Magistrate Judge also recommended that all the motions to strike be denied. For the reasons stated below, the court adopts the Magistrate Judge's report and recommendation. Plaintiffs' motion for leave to proceed as a class is denied and plaintiffs' and defendants' motions to strike are also denied.

## BACKGROUND

The facts of this case were fully explained in the Magistrate Judge's report and recommendation. For the purposes of

this opinion, a brief summary of the facts is necessary. As already noted, the plaintiffs are participants in employee welfare benefit plans that provide health insurance benefits under policies issued by the three defendant insurance companies in this case. The plaintiffs bring this suit on behalf of certain family members who are beneficiaries under these plans. These beneficiaries have allegedly been diagnosed as suffering from bipolar affective disorder (also known as manic depressive disorder). The plaintiffs have submitted claims for reimbursement of costs incurred in treating these individuals, but the defendants have denied their claims or limited the amount of benefits paid.

The defendants have denied such claims for reimbursement because they assert that the pertinent insurance policies classify the disorder as a "mental illness" subject to more limited coverage than treatment of a "physical illness." The plaintiffs contend that bipolar affective disorder is a "biological, physical disorder of the brain functions, with multiple symptomatic manifestation" and assert that they are entitled to full reimbursement from their respective insurance companies for the costs of treating this illness. *See* Second Amended Complaint at ¶ 5. Because the plaintiffs believe that health insurance policies issued by the defendants to other employee benefit plans similarly limit benefits for treatment of the disorder, the plaintiffs seek to certify a class comprised of all participants and beneficiaries of these plans who have submitted health insurance claims on behalf of themselves or other beneficiaries, or have had claims submitted on their behalf for treatment of bipolar affective disorder and whose claims have been limited or denied by the defendants under the mental or emotional condition of their respective plans.

The first named plaintiff is Doe I, a partner in a law firm that established an employee benefit plan carrying an insurance policy from defendant Guardian Life. In pertinent part, Guardian Life's policy limits coverage for the psychological treatment of mental and emotional conditions, drug abuse, and alcohol abuse. Plaintiff's Memo, Exhibit A.[1] Doe I has filed claims with Guardian Life for the treatment of his wife, Jane, purportedly for bipolar affective disorder. Guardian Life vehemently contests the nature of her condition. Guardian Life also claims that Doe I is estopped from claiming that his wife is not mentally ill based upon statements made by Doe I during earlier guardianship proceedings for the involuntary admission of his wife. Guardian Life further claims that Doe I is not an appropriate class representative because he has allegedly reached an agreement with his wife's doctors to pay only half the amounts due to them if he succeeds and nothing if he fails in this law suit. Doe I seeks the recovery of $18,000 in expenses.

Plaintiff Doe II's employer selected an insurance policy for its employee benefit plan offered through the Illinois Manufacturers Association ("IMA"). The IMA negotiated the provision of the policy in question from defendant Travelers. Travelers claims that all of its policies issued through IMA have some form of limitation on benefits for mental or nervous disorders, although the policies differ as to the level of benefits. Doe II's policy covers certain expenses for non-confining mental or nervous disorders up to $1,000 and has a maximum lifetime benefit for mental disorders of $50,000. Doe II is the only one of approximately 58 participants in his plan to submit a claim of this type. His total claims exceed the $50,000 lifetime limit and he seeks the recovery of expenses totalling more than $30,000.

Doe II's claims arise from the treatment of his son, James. Travelers, like Guardian Life, argues that Doe II is estopped from raising his claim based upon proceedings brought by Doe II for the involuntary commitment of his son. Travelers also argues that Doe II's son suffers from a mental illness because he has undergone psycho-

---

**1.** Guardian Life claims that nearly all employee plans purchasing insurance from it contain a similar limitation, although some policies may vary as to deductibles, co-insurance features, maximum limits, and similar provisions. Plaintiff's Memo, Exhibit D at 2.

therapy. Travelers further argues that Doe II's son is not a "dependent" within the meaning of the pertinent policy and thus is not entitled to their insurance coverage.

Finally, Plaintiff Doe IV is president of a small company. Doe IV purchased the company's insurance policy from defendant Blue Cross. Blue Cross' policy limits services for the treatment of mental illnesses to $25,000 per benefit period and $50,000 per lifetime. Outpatient mental services are reimbursed at a maximum rate of $25 per visit up to a maximum of $1,000 per benefit period and $10,000 per lifetime. "Mental illness" is defined by the policy as "those illnesses classified as mental disorders in Section II of the current edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association." Plaintiff's Memo, Exhibit C at 26.

Blue Cross does not contest that Doe IV's son, Joe, suffers from bipolar affective disorder. There is also no evidence that Doe IV has brought proceedings for the involuntary admission of his son. Blue Cross maintains that there are, however, individual issues of reliance which affect insurance coverage in this case and that Doe IV is subject to the defense that he is a plan sponsor.

### THE MOTION FOR LEAVE TO PROCEED AS A CLASS

Federal Rule of Civil Procedure 23 ("Rule 23") establishes a two-step procedure for determining whether a class action suit is appropriate. The court must first consider whether the proposed class meets the four preliminary requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the class representatives are typical of the claims or defenses of the other class members, and (4) the class representatives are able to protect the interests of the class fairly and adequately. *Spencer v. Central States, Southeast and Southwest Areas Pension Fund,* 778 F.Supp. 985, 989

(N.D.Ill.1991). A class action that satisfies the requirements of Rule 23(a) then must also qualify under one of the three subsections of Rule 23(b).

In evaluating a motion for class certification, the allegations made in support of certification are taken as true and the merits of the case are not considered. *Id.; Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The burden of proving that the requirements for class certification have been met rests with the plaintiffs. *Spencer,* 778 F.Supp. at 989; *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

In the instant case, this court agrees with Magistrate Judge Gottschall that the plaintiffs have properly established the class certification requirements under Rule 23(a). Under Rule 23(a)(1), a plaintiff class must be so numerous that joinder of all members is impracticable. "Impracticable" does not mean impossible. Rather, the numerosity requirement will be met if joinder of all members is extremely difficult or inconvenient. *Gomez v. Illinois State Board of Education,* 117 F.R.D. 394, 398–99 (N.D.Ill.1987). In considering whether joinder of all members is impracticable, the court must consider such factors as: the size of the class, the geographic dispersion of its members, the nature of the relief sought, and the practicality of forcing relitigation of a common core issue. *Id.*

As the Magistrate Judge discussed, the plaintiffs here contend that one percent of the general population suffers from bipolar affective disorder. The plaintiffs also estimate that each of the three proposed classes would include at least 200 individuals. The defendants do not contest these figures. Based upon the plaintiffs' estimates, the court agrees with Magistrate Judge Gottschall's conclusion that these numbers suffice for the purposes of establishing numerosity. Classes much smaller in size than the proposed class in this case have been certified in this district.

*See, e.g., Rosario v. Cook County,* 101 F.R.D. 659 (N.D.Ill.1983) (the court certified a class of twenty). Furthermore, the Magistrate Judge properly concluded that a review of the records of defendants' thousands of insured plans would likely uncover many more potential class members whose participation would sufficiently increase the class size for the purposes of establishing numerosity. This court is entitled to make such common sense assumptions in order to support a finding of numerosity. *Patrykus v. Gomilla,* 121 F.R.D. 357, 360–61 (N.D.Ill.1988); *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984).

▪ The defendants object to this decision because they contend that under ERISA each plaintiff only has standing to assert claims on behalf of members of his own plan. They claim that it is very likely that each plaintiff would be the only participant in his plan to submit a reimbursement claim for treatment of bipolar affective disorder and the requirement of numerosity thus would not be met. Here, the plaintiffs bring their suit under Section 502 of ERISA which permits a participant or a beneficiary to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[2] While the Seventh Circuit has recognized that ERISA is a comprehensive statute, the court has stated that it is not required "to give an unduly cramped reading to those provisions granting standing to certain classes of persons under the Act, i.e., participants, beneficiaries, and fiduciaries." *Sladek v. Bell System Management Pension Plan,* 880 F.2d 972, 976 (7th Cir.1989).[3]

This court agrees with the Magistrate Judge's conclusion that the plaintiffs, as well as future potential class members, have standing in this instance. The Magistrate Judge thoroughly considered the cases presented by the defendants to support their claim that the plaintiffs did not have standing. While Magistrate Judge Gottschall recognized that the cases presented by the defendants advocated a stricter reading of Section 502, the Magistrate Judge properly concluded that these cases were not dispositive of the issue. For example, the district court in *Brink v. DaLesio,* applying a very strict reading of Section 502, determined that the plaintiffs in that case only had standing with respect to funds in which they were participants. 496 F.Supp. 1350 (D.Md.1980). However, upon review of the district court's determination, the appellate court determined that the district court exceeded its discretion in denying certain parties intervention in the suit. *Brink v. DaLesio,* 667 F.2d 420 (4th Cir.1981). The defendants have not refuted the Magistrate Judge's determination that *Brink*'s disposition on appeal greatly diminishes its force.

This court is persuaded by the Magistrate Judge's comparison of this case with those where the plaintiffs were considered to have standing even thought the pertinent class actions involved more than one plan under ERISA. Most notably, the Magistrate Judge compared this case to *Gruber v. Hubbard Bert Karle Weber, Inc.* where the court permitted participants in plans sponsored by various employers to bring a class action against a common provider of insurance benefits. 675 F.Supp. 281 (W.D.Pa.1987). While the court did not consider the specific issues of class certification in *Gruber,* the class which was permitted to proceed consisted of parties with relationships very similar to those existing under the contractual agreements in this

---

**2.** As the Magistrate Judge noted, ERISA's standing requirement is in addition to and separate from the constitutional requirement that a plaintiff allege a personal injury fairly traceable to the defendant's allegedly unlawful conduct that is likely to be redressed by the requested relief. *See Fulani v. Hogsett,* 917 F.2d 1028, 1030 (7th Cir.1990).

**3.** ERISA provides that an action may only be brought by a "participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a); *Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 735 (7th Cir.1986).

case.[4] The defendants have not refuted this comparison. Thus, like the plaintiffs in *Gruber* who had standing even though they participated in different insurance plans, the plaintiffs in this case also have standing to sue. The named plaintiffs in this case have alleged the requisite injuries to themselves and the same injury to other potential class members.[5]

■ The plaintiffs also meet the requirements for establishing commonality and typicality under Rule 23(a)(2) and (3). Under the commonality requirement, the parties seeking class certification must show that they have at least one question of law or fact common to the class. *Spencer*, 778 F.Supp. at 989 n. 2; *Patrykus*, 121 F.R.D. at 361. The need to determine individual questions after resolution of the common question will not preclude a finding of commonality since the court may order separate hearings or use other appropriate measures to resolve these issues. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D.Ill.1989).

■ As the Magistrate Judge properly recognized, the commonality requirement is clearly met in this instance since the plaintiffs' claims all arise from defendant insurers' refusal to reimburse them for the cost of treating bipolar affective disorder. Defendant Guardian Life objects to this determination because it claims that individualized issues, such as questions regarding ERISA plan terms and structure, estoppel, accuracy of diagnosis, and the precise nature of the treatment, will predominate this litigation. The Magistrate Judge thoroughly reviewed the defendants' defenses and found that the majority of the defenses raised would probably recur during the litigation and may be amenable to resolution in whole or in part as a matter of law.

While this court has serious concerns about the court's ability to properly resolve the numerous individual issues which will arise in the proposed class action, this concern does not affect the court's determination that the commonality requirement has been met. As already noted, the plaintiffs must only show that they have at least one question of law or fact common to the class to establish the requisite commonality. *See Spencer*, 778 F.Supp. at 989 n. 2; *Patrykus*, 121 F.R.D. at 361. This element has been adequately established.

■ Under the typicality requirement, the claims of the representative plaintiffs must be typical of the claims of the class. *Patrykus*, 121 F.R.D. at 361. The Seventh Circuit has held that the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 351 (S.D.Ill.1987). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente*, 713 F.2d at 232 (quoting H. Newberg, *Class Actions*, § 1115(b) (1977)).

■ Magistrate Judge Gottschall determined that the typicality requirement was properly established in this case because the named plaintiffs' claims for reimbursement from the defendant insurers are typical of the reimbursement claims expected of all members of the potential class. As previously stated, the Magistrate Judge also determined that although the defendants raise various defenses with respect to individual plaintiffs that must be ad-

---

4. In *Gruber*, the court certified two classes of plaintiffs: (1) employers who were members of the Lake Erie Employers' Association ("LEEA"), a corporation created to offer employees health benefit plans, and have employees or their dependents who have incurred medical bills not paid by LEEA, and (2) all employees and their dependents who were beneficiaries of the LEEA plans and who have incurred medical bills not paid by LEEA. The plaintiffs, like the plaintiffs

in this case, sought compensation for unpaid benefits, plus attorney's fees and costs. 675 F.Supp. at 282–83.

5. As the Magistrate Judge suggested, in the event that certification of the class were permitted, the defendants would then be entitled to contest the standing of other class members on an individual basis. *See Gruber*, 675 F.Supp. at 281.

dressed, these individual defenses would not necessarily prevent effective litigation of the common question. This court agrees with the Magistrate Judge that the plaintiffs' claims meet the typicality requirement. Although there are factual distinctions between the plaintiffs' claims, their claims, like those of other class members, arise from the same practice of denying reimbursement requests for the treatment of bipolar affective disorder and are based on the same legal theories of recovery. *See De La Fuente*, 713 F.2d at 232. This finding is all that is required to establish the typicality element.

Like Magistrate Judge Gottschall, this court is concerned, however, about the effect of the defendants' various defenses on the litigation of this case. As defendants Guardian Life and Travelers suggest, a possible defense applicable only to one named plaintiff could destroy the element of typicality. "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *J.H. Cohn & Co. Self–Employment Retirement Trust v. American Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir.1980). However, the court agrees with Magistrate Judge Gottschall that the claims in this case are sufficiently related to assure that the interests of class members will be adequately represented. Thus, this court will not preclude a finding of typicality on this basis.[6]

■ The last element that must be established under Rule 23(a) is that the class representatives are able to fairly and adequately protect the interests of the class. To establish this element, the plaintiffs must demonstrate that the named representatives have a sufficient interest in the outcome to ensure vigorous advocacy while having no interest antagonistic to the interests of the class. The plaintiffs must also demonstrate that counsel for the named

plaintiffs are competent. *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill. 1986). Since counsels' competence to prosecute this class action has not been contested and plaintiffs' attorneys have presented appropriate evidence demonstrating their experience and qualifications, this court will not consider this second issue.

■ The Magistrate Judge determined that Doe I, the one plaintiff whose ability to represent the class was challenged, could adequately represent the other plaintiffs. Guardian Life argues that Doe I has an untenable conflict of interest in this case because, as the owner of his business, he arguably has an obligation to protect the actuarial soundness of his business' benefit plan. In addition, Guardian Life claims that since Doe I reached an agreement with his doctors regarding payment of his medical bills,[7] his diminished liability for those bills significantly diminishes his interest in this litigation.

Contrary to Guardian Life's assertion, these factors do not sufficiently demonstrate that Doe I's interests were antagonistic to the subject matter of this litigation. *See Riordan*, 113 F.R.D. at 64. The Magistrate Judge correctly found that Guardian Life failed to establish that Doe I had a conflict of interest with similarly situated plan participants because, as a partner in his law firm, he might be a fiduciary of the firm's employee benefit plan. Guardian Life did not provide evidence concerning the law firm's benefit plan nor its agreement with the defendant insurance company. The Magistrate Judge therefore correctly decided that while it was not inconceivable that Doe I could be a fiduciary of the pertinent benefit plan, she would not make this assumption without evidentiary support. Moreover, since Doe I still stands to lose $9,000 if he is not successful in this litigation, the Magistrate Judge properly concluded that he still has a

---

**6.** This court will also not preclude a finding of typicality based on concerns regarding the manageability and efficiency of this case proceeding as a class action. These concerns are better addressed under Rule 23(b).

**7.** As previously noted, Doe I and the doctors he owed reached an agreement to accept payment of half of the approximately $18,000 owed to them should this case succeed. In the event that this litigation is not successful, the doctors agreed to write off the balance.

significant interest in the outcome of the case. While Guardian Life renews its objection to Doe I serving as a plaintiff in this case, it does not provide this court with any evidence to contradict the Magistrate Judge's conclusion.

■ Furthermore, defendants Guardian Life and Travelers do not provide this court with any evidence to support their objection to Magistrate Judge Gottschall's conclusion that the various defenses raised with respect to each named plaintiff would significantly affect the adequacy of their representation. As previously noted, the court must look for antagonism going to the subject matter of the litigation when determining whether a named party's interests are adverse to those of other class members. *Id.* The mere existence of defenses to the named plaintiffs' individual claims in this case does not appear to affect these plaintiffs' interest in compelling the defendant insurers to reimburse claimants for costs of treating bipolar affective disorder. Thus, since the case involves common questions of fact and law, and since the claims of the named plaintiffs are substantially similar to those of the class as a whole, the court finds that this prong of the adequacy of representation test is also met.

Having determined that the proposed class satisfies the requirements of Rule 23(a), the court must now consider whether the proposed class also qualifies under one of the three subsections of Rule 23(b). The plaintiffs in this case claim that this action may be certified under all three of Rule 23(b)'s subsections. This court disagrees. This court will first consider Rule 23(b)(3), as did the Magistrate Judge, because this subsection explicitly addresses the court's main concern in this case, the manageability of litigating this case as a class action.[8]

Under Rule 23(b)(3), a class that meets the requirements of Rule 23(a) may be certified if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy." *Riordan*, 113 F.R.D. at 65. Magistrate Judge Gottschall properly noted that while Rule 23(b)(3) is often considered in conjunction with the commonality requirement of Rule 23(a)(2), the focus of Rule 23(b)(3) is actually different. "Whereas (a)(2) addresses the issue of whether Rule 23 has any applicability at all to the law suit, (b)(3) addresses the issue of whether Rule 23 certification will have practical utility in the suit, considering the facts, substantive law, procedural due process, and fundamental fairness." *Brown v. Cameron–Brown Co.*, 92 F.R.D. 32, 41–42 (E.D.Va.1981). Only where questions common to the class predominate over questions affecting individual members will the court be able to achieve the economies of time contemplated by the rule. *Id.* (citing Fed.R.Civ.P. 23 (Advisory Notes)).

■ Specifically, the predominance question under Rule 23(b)(3) requires the court to consider whether the group seeking class certification seeks to remedy a common legal grievance. The common issues need not, however, be dispositive of the entire litigation. *Riordan*, 113 F.R.D. at 65. The superiority question under Rule 23(b)(3) requires the court to also consider whether a class action is superior to other methods of adjudication. The court must consider such factors as:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and[ (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

■ As previously discussed with respect to Rule 23(a)(2), the common issue in this case is the determination of whether bipolar affective disorder is considered a

---

**8.** This factor also may affect the court's determination of whether the class could also be certified under either Rule 23(b)(1) or (2). *See Simer v. Rios*, 661 F.2d 655, 668 n. 24 (7th Cir.1981).

mental or a physical illness under the pertinent insurance policies. While the parties may share a strong, common interest in resolving this issue, the court concurs with Magistrate Judge Gottschall's determination that this common question does not predominate over the other issues in this case. The defendants raise various defenses with respect to each named plaintiff in this case which will significantly affect each phase of this litigation from discovery through trial.

Magistrate Judge Gottschall thoroughly considered the various defenses raised by the defendant insurers. This review amply demonstrates that even if the court resolved the plaintiffs' common question, a series of mini-trials would have to follow addressing numerous factual and legal issues including the accuracy of the diagnoses, noncoverage, and estoppel. The interests and liabilities of the plaintiffs' employers might also need to be addressed and would require consideration of each plan's structure and controlling documents. The need for such extensive litigation of other issues with respect to each plaintiff conflicts with the requirement that common issues predominate. It also suggests that litigation of the proposed class action would not comport with Rule 23's purpose of promoting efficiency. *See Brown,* 92 F.R.D. at 41–42.

The plaintiffs object to this conclusion because they claim that the defendants' various defenses present relatively simple issues which can be dealt with in a series of brief evidentiary hearings or minitrials. However, the plaintiffs fail to provide this court with any evidence to support their claim that the defenses at issue would be readily resolved. Indeed, the Magistrate Judge's detailed explanation of the question of employers' interests and potential liability in this litigation suggests that the issues in this case are much more compli-

cated than the plaintiffs suggest. Furthermore, the plaintiffs' recognition that resolution of such issues would require a series of hearing and minitrials actually supports this court's conclusion that certification under Rule 23(b)(3) is not appropriate. As this court has repeatedly noted, the purpose of Rule 23 is to encourage economy in litigating cases where common questions of law or fact predominate. Having to rely on hearings and minitrials, which necessarily entail additional discovery and possibly the bringing of various motions, to resolve numerous unique issues in this case hardly comports with Rule 23's purpose.[9]

Just as the need to address numerous issues beyond the one identified common issue in this case prohibits a finding that common issues predominate, it also prevents this court from concluding that a class action provides the most superior way of resolving the claims in this case. The difficulties likely to be encountered in managing the proposed class action substantially outweigh any possible benefits derived from consolidating the plaintiffs' claims. As the prior discussion of the predominance requirement suggests, this court finds that a significant number of distinct and legally or factually complex issues would have to be addressed with respect to each plaintiff in this case. For example, the threshold determination of whether each beneficiary has been properly diagnosed as suffering from bipolar affective disorder would require substantial investigation. Each beneficiary's current doctors would need to testify regarding their relationship with their patient and their patient's diagnosis. Additional doctors may be called upon to examine the beneficiary, to conduct further tests and/or explain their results, to explain the symptoms associated with the disorder and their affects on the beneficiary's need for treatment or

9. The plaintiffs also object to this determination because they claim that a defense to their suit based upon the intent of the plan sponsors to cover or not cover bipolar affective disorder as a physical disease need not be handled on an individual basis. The plaintiffs argue that since the insurance policies use similar, if not identical language, a defense dependent upon the intent of the policy sponsors would only arise if the court found that the meaning of the language in the insurance contracts differed from contract to contract. The court disagrees with this objection because, as the court will explain, the meaning of the plans' language must be determined on an individual basis.

ability to function in society, and to suggest appropriate treatment plans for that beneficiary. This partial list of evidence that would have to be considered with respect to each beneficiary just to verify whether that person actually suffers from bipolar affective disorder clearly demonstrates the great potential for confusion and inefficiency that would result if this case proceeded as a class action.[10]

The existence of numerous individual issues in this case also provides support for the court's conclusion that the plaintiffs are not entitled to class certification under Rule 23(b)(1). A class action may be maintained under Rule 23(b)(1) if the requirements for Rule 23(a) are met and the prosecution of actions by or against individual members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1).

This court agrees with Magistrate Judge Gottschall's determination that certification under Rule 23(b)(1) would be inappropriate because, contrary to the plaintiffs' assertion, numerous factual issues unique to each plaintiff would have to be addressed in this case. Certification under Rule 23(b)(1) should be confined to those cases where there are no, or few, individual questions. The presence of individual issues, such as those in this case which the court has previously discussed, precludes the possibility of varying adjudications in different lawsuits and establishing incompatible standards to govern defendants' conduct. *See Horowitz v. Pownall,* 105

F.R.D. 615, 618 (D.Md.1985). Therefore, certification as a class action under Rule 23(b)(1) is not appropriate in this instance.

This court further agrees with the Magistrate Judge that certification is not appropriate under Rule 23(b)(2). Certification under Rule 23(b)(2) requires that the party opposing the class must have acted or refused to act on grounds "generally applicable" to all class members and final injunctive or corresponding declaratory relief must be appropriate. Fed.R.Civ.P. 23(b)(2); *Edmondson v. Simon,* 86 F.R.D. 375, 382 (N.D.Ill.1980), *vacated on other grounds,* 33 Fair Emp.Prac.Cas. (BNA) 943 (N.D.Ill.1982). Of particular interest in this instance, the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members. *Edmondson,* 86 F.R.D. at 383. This requirement does not automatically preclude the award of monetary recoveries on a class-wide basis as long as monetary relief is either part of the equitable relief granted or is secondary or ancillary to the predominant injunctive or declaratory relief. *Id.* Since the plaintiffs essentially seek monetary relief in this instance, the Magistrate Judge correctly determined that the proposed class action cannot be certified under Rule 23(b)(2). The plaintiffs do not raise any objections regarding this conclusion.

The plaintiffs object, however, to the Magistrate Judge's conclusion that certification is particularly inappropriate under Rule 23(b)(1) or (2) because participation in classes created under these subsections is mandatory. Since the plaintiffs have sizable monetary claims in this case, Magistrate Gottschall questioned the wisdom of certifying this case under Rule 23(b)(1) or (2) because these subsections have no provision for opting-out of the litigation. The plaintiffs counter that certifying a mandatory class is especially appropriate under these circumstances because most potential

---

**10.** This concern regarding potential confusion and inefficiency applies equally to issues addressed by the court and the jury in this case. A jury could not reasonably be expected to keep track of all the evidence presented just on the question of properly diagnosing the disorder in the 200 or more parties in this case.

class members lack either the financial or emotional resources for individual litigation. Therefore they claim, it is unlikely that they would benefit from an opt-out provision. While it is unfortunate that plaintiffs may not be able to bring suit individually, this argument does not provide a proper basis for certifying a mandatory class. Moreover, this court will not certify a mandatory class based upon the plaintiffs' conjecture that class members would not choose to opt-out of the class. Rule 23 intends courts to weigh the benefits and the burdens of consolidating litigation to determine whether to certify a class. It does not intend to help potential individual plaintiffs avoid the strain of commencing litigation.

██ Finally, Magistrate Judge Gottschall suggested that it might be more appropriate to certify this action under Rule 23(b)(1) or (2) for the limited purpose of determining the common question of whether bipolar affective disorder is a mental or a physical illness. Rule 23(c)(4)(A) authorizes the bringing or maintenance of a class action with respect to particular issues in a case. While the burden is generally on the plaintiff to submit such a proposal, a court may also choose to take this step sua sponte. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 408, 100 S.Ct. 1202, 1214–15, 63 L.Ed.2d 479 (1980).

██ The plaintiffs did not submit such a proposal in the instant case, but they now claim that litigating the proposed issue may well serve their goals. This court agrees with the defendant insurers, however, that this case should not be certified for the limited purpose of litigating the question of whether bipolar affective disorder qualifies as a mental or a physical illness under the pertinent insurance policies. As defendant Blue Cross suggests, the question of whether bipolar affective disorder is a mental or physical illness cannot be determined in the abstract. Rather, it depends upon the definition of "mental illness" employed in each of the pertinent policies. As stated in *Nazay v. Miller*, ERISA is concerned with the administration of established employee benefit plans and not with what benefits an employer grants its employees. 949 F.2d 1323, 1329 (3d Cir.1991). It cannot be expected that all the insurance plans at issue in this case intended to provide the same coverage or rely on the same definitions in establishing their coverage.

The plaintiffs have provided this court with no evidence to the contrary. At best, the plaintiffs suggest that the different insurers must be relying upon the same definition of "mental illness" since the plans use similar terminology. They contend that the defendant insurers would have produced examples of policies excluding bipolar affective disorder from the classification of mental illnesses if such policies existed. However, contrary to the plaintiffs' suggestion, the defendants are under no obligation at this juncture to argue the merits of whether bipolar affective disorder must be classified as a mental illness under their respective policies. *See Spencer*, 778 F.Supp. at 989.

Furthermore, the court agrees with defendant Travelers that certification under Rule 23(c)(4)(A) is inappropriate in this case because even if the court could resolve the proposed issue, its resolution would not significantly advance the litigation in this case. "... Although common questions need not be dispositive of the entire class action, ... their resolution should at least provide a definite signal of the beginning of the end [of the litigation]". *In re Tetracycline Cases*, 107 F.R.D. 719, 733 (W.D.Mo.1985); *see also Mertens v. Abbott Laboratories*, 99 F.R.D. 38, 41 (D.N.H. 1983). As this court has discussed in detail, numerous factual and legal issues must be addressed with respect to each plaintiff in this case. Contrary to the plaintiffs' assertion, certification of the proposed limited issue is not warranted in this case.[11] The court recognizes that bringing

---

**11.** This court has considered consolidation of this case solely for the discovery phase of the litigation or certification of classes of individuals under each insurance policy. However, given the disparity in the evidence and the issues which must be addressed with respect to each

the plaintiffs' actions separately may present their own set of problems. However, the court finds that the burdens of litigating this case as a class action far outweighs the burdens of litigating the plaintiffs' claims individually. For the foregoing reasons, this court adopts the Magistrate Judge's report and recommendation and denies plaintiffs' motion for leave to proceed as a class.

## THE MOTIONS TO STRIKE

During the briefing on the class certification motion, the parties brought four separate motions to strike materials submitted in support of class certification. In her report and recommendation, the Magistrate Judge thoroughly explains the nature of the disputed submissions and the objections to them. In brief, Guardian Life brought a motion to strike plaintiff's supplemental response to Guardian Life's second request to admit. In that supplemental response, Dr. Stephen J. Chernaik, one of Jane Doe's doctors, attempted to correct his testimony from a 1988 state court guardianship proceeding where he had testified that Jane suffered from "schizophrenic effective disorder" and not bipolar affective disorder. The plaintiffs brought a motion to strike the affidavit submitted by Guardian Life of Dr. David A. Gehlhoff, a board certified psychiatrist who diagnosed Jane's condition based upon her records. The plaintiffs also brought a motion to strike certain excerpts of Doe IV's deposition testimony where he discussed his intentions when purchasing insurance coverage. Finally, Blue Cross brought a motion to strike certain of plaintiffs' statements regarding Doe IV's deposition testimony.

 Magistrate Judge Gottschall thoroughly reviewed the disputed documents and the parties arguments regarding their submission into evidence. She ultimately concluded that all the motions to strike should be denied because the docu-

ments related to the merits of the plaintiffs' case and should not be addressed at this stage of the litigation.[12] This court agrees with the Magistrate Judge that the admissibility of the evidence at issue in the motions to strike should not be considered at this stage because they relate to the merits of the case. Rule 23 does not give a court authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. *Eisen*, 417 U.S. at 177, 94 S.Ct. at 2152. "Indeed, such a procedure contravenes Rule 23 by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it." *Id*. When determining the propriety of a class action, the only issue the court should consider is whether the requirements of Rule 23 are met. *Id*. at 178, 94 S.Ct. at 2152–53 (citing *Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir.1971)). Moreover, as the Supreme Court suggested in *Eisen*, a preliminary determination of the merits of this case may result in substantial prejudice to the defendants since the traditional rules and procedures applicable to civil trials are not necessarily followed. "The court's tentative findings, made in the absence of established safeguards, may color the subsequent proceedings and place an unfair burden on the defendant." *Id*. at 178, 94 S.Ct. at 2153.

Only defendant Guardian Life objects to the denial of its motion to strike. The court will not address Guardian Life's argument, however, because it goes to the merits of the motion which, as the court has explained, the court cannot address at this stage of the litigation. Therefore, for the foregoing reasons, the court adopts the Magistrate Judge's report and recommendation. All the motions to strike brought during briefing on the motion for class certification are denied.

---

plaintiff, the court finds that these techniques would still raise such manageability and confusion problems that proceeding with the case in these ways would not be advantageous.

**12.** Although she did not rely on them in reaching her final decision, Magistrate Judge Gottschall also considered the substantive arguments made by the parties with respect to each motion to strike.

## CONCLUSION

For the reasons stated above, the court adopts Magistrate Judge Gottschall's report and recommendation. Plaintiffs' motion for leave to proceed as a class is denied and plaintiffs' and defendants' motions to strike are also denied. For purposes of appeal, time begins to run from the date that this memorandum opinion and order is entered.